# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RODNEY B. GAINEY,     *

Plaintiff,     *

v.     *     Civil Action No. PX-17-1242

WARDEN CAPASSO,     *

Defendant.     *
***

## MEMORANDUM OPINION

Self-represented Plaintiff Rodney B. Gainey, who was previously incarcerated at the Harford County Detention Center ("HCDC") in Bel Air, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendant Michael Capasso, Warden of HCDC.[1] *See* ECF Nos. 1, 3, 7. Through his Complaint filed on May 9, 2017, amended on May 31, 2017, and supplemented six times, Gainey seeks $100,000 in monetary damages for Defendant's alleged deprivation of his constitutional rights. *Id.*; ECF Nos. 10-14.

On December 18, 2017, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 18. Gainey was released from HCDC in November, 2017 (ECF No. 17). The Court had informed Gainey that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the failure to file a response in opposition to the Defendant's Motion could result in dismissal of the Complaint. ECF No. 19. Gainey did not respond. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendant's Motion to Dismiss shall be granted.

---

[1] Gainey originally brought his Complaint against Warden Capasso; Maryland District Court Judge Victor K. Butanis; Joseph I. Cassilly, the Harford County Maryland State's Attorney; and Kelly Casper, the District Public Defender for Harford County, but the other Defendants have since been dismissed from suit. *See* ECF Nos. 5 & 6.

**I.     Background**

Following his arrest on "several Maryland felony and misdemeanor" charges, Gainey appeared in Harford County District Court on January 9, 2017, where he was to be formally advised of his rights. ECF No. 1, p. 1.[2] The case was continued to the following day prior to advisement, and Gainey was released on bail. On January 26, 2017, Gainey appeared with private counsel and was remanded to the Harford County Sheriff "on an unrelated offense." *Id.* Gainey's District Court hearing took place on March 22, 2017, at which time he was offered an opportunity to proceed to trial in District Court without counsel, accept the State's Attorney's offer to plead guilty in exchange for a sentence of one year and one day, or request a jury trial which would result in transferring the cases to the Circuit Court. *Id.*; ECF No. 1, p. 2.

Gainey originally filed his Complaint on May 15, 2017, ECF No. 1, and amended it on May 31, 2017, stating, in relevant part, that he "attempted to make contact with the Office of the Public Defender through Harford County Detention Center's institutional mail system and grievance system." ECF No. 3, p. 3. Gainey claimed that "[t]hese attempts were futile until a family member contacted the Public Defender." *Id.* By Memorandum Opinion and Order dated June 8, 2017, this Court directed Gainey "to amend his complaint against Warden Capasso with regard to the delay in outgoing mail," noting that "[a]n unreasonable delay in delivery or mailing general mail within a prison may state a cognizable claim." ECF No. 5, pp. 4-5.

On June 22, 2017, Gainey filed his First Supplement, alleging that Defendant and the staff at HCDC failed to give him "the proper means to contact the Public Defender." ECF No. 7, p. 3. Gainey stated that he requested, received, and submitted three separate forms to HCDC staff for the purpose of obtaining legal representation through the Harford County Public Defender, and also sent a personal letter, but was unable to contact counsel in time for his trial on

---

[2] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

March 22, 2017.  *Id.* at pp. 1-3.  Gainey alleges that the delay in processing his mail at HCDC played a major role in denying [him] counsel and due process of the law." *Id.* at p. 3.

On July 12, 2018, Gainey filed his Second Supplement, alleging that Defendant neglected to allow the Harford County Public Defender to "readily vet inmates properly and in a timely manner" during the inmates' first appearance before a County Commissioner, resulting in a violation of his due process rights.  ECF No. 10.

On July 19, 2018, Gainey filed his Third Supplement, claiming that Defendant and his staff further denied Gainey his constitutional right to counsel when they failed to present him during the Public Defender's visit to HCDC on January 9, 2017.  ECF No. 11.  According to Gainey, HCDC staff mistakenly presented in his place an inmate with the last name of "Gaines." *Id.*

On August 14, 2017, Gainey filed his Fourth Supplement, alleging that HCDC violated his right to privacy by refusing to allow through the mail letters enclosed in an envelope.  ECF No. 12.  Gainey also stated that while at HCDC, he was "hindered" from speaking to his attorney over the phone after a sergeant "chose to take phones for an undetermined amount of time . . . as punishment" for other inmates who violated facility rules.  *Id.*

On September 25, 2017, Gainey filed his Fifth Supplement, informing the Court that the Finance Officer at HCDC did not file an account statement on his behalf, as directed, and that he was "violently attacked unprovoked" after HCDC staff housed him with a violent inmate.  ECF No. 13.  Gainey stated his belief that the latter "was done in retaliation for the filing of the civil suit" and that "in the process, the Defendant is further responsible for violating [his] civil right by causing . . . this cruel and unusual punishment." *Id.*

Gainey filed his Sixth Supplement on October 3, 2018.  ECF No. 14.  In that pleading,

3

Gainey alleged that there had been a delay in medical treatment following the assault he suffered on September 19, 2017. *Id.* Gainey stated that he received sutures to help close a wound, and that a follow-up was scheduled for 10 days, but was instead postponed to 15 days later. *Id.* He added that he had filed an institutional grievance for each of his complaints, but had not received any reply. *Id.*

## II. Standard of Review

In reviewing a complaint in light of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), unsupported legal conclusions, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), and conclusory factual allegations devoid of any reference to actual events, do not suffice. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

In his Motion, Defendant seeks dismissal under Federal Rules of Civil Procedure 12(b)(6), or summary judgment under Rule 56. In support, Defendant argues that in this § 1983 action, he cannot be held vicariously liable for his subordinates' misconduct under a theory of respondeat superior, and he is entitled to qualified immunity. ECF No. 18.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than naming Defendant in the caption of the Complaint, Gainey does not attribute any specific action or inaction on the Defendant's part that resulted in a constitutional violation. Simply stated, Gainey's allegations fail to state a claim against Defendant.

Moreover, Gainey's primary contention that HCDC's delay in processing mail led to his inability to retain counsel in time for his trial is merely a conclusory allegation that is not sufficient to state a claim. While the interference by prison officials with certain types of mail may state a constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional deprivation. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990). Based on the allegations as pleaded, the Court cannot conclude that Gainey's inability to secure a Public Defender before his hearing was attributable to Defendant.

Likewise, Gainey's allegations that HCDC staff failed to present him to the Public Defender and failed to file an account statement on his behalf, do not state a valid claim. At most, any oversight on the part of HCDC staff amounted to negligence or a plain mistake, neither of which implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). Also lacking in merit is Gainey's contention that HCDC's policies regarding mail, use of

5

telephones, and declining to readily "vet" inmates for the Public Defender upon intake, violate his constitutional rights. It is well-established that "while persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "These constraints on inmates, and in some cases the complete withdrawal of certain rights, are 'justified by the considerations underlying our penal system.'" *Id.* (citation omitted).

To the extent that Gainey alleges that Defendant failed to protect him from harm in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and failed to provide him with adequate medical care, his claims also fail. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citation omitted). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to

be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The subjective component requires "subjective recklessness" in the face of a serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

According to the Complaint and Supplements, another inmate had assaulted Gainey and he was wounded. Even assuming that Defendant or HCDC staff did not provide adequate medical attention in response, Gainey pleads no facts sufficient to demonstrate that subjectively, Defendant or HCDC staff had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be and was drawn that plaintiff suffered substantial risk of serious harm. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (citation omitted). That Gainey suffered harm at the hands of another inmate, or that his medical checkup was delayed by five days, does not alone establish Defendant's deliberate indifference. The claims must be dismissed.

Alternatively, Gainey has failed to plead sufficient facts from which to discern Defendant's supervisory liability for these § 1983 claims. The doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no

7

respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). As such, to establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

In this action, Gainey has failed to plead sufficient facts that establish Defendant's supervisory indifference to, or tacit authorization of, any misconduct by subordinates. Indeed, Gainey has failed to plead the deprivation of any specific constitutional right, and so Gainey as a matter of law fails in averring that Defendant could be deliberately indifferent to any such deprivation. Nor do Gainey's averments establish any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse"). Dismissal is proper under this theory as well.[3]

---

[3] In light of the Court's rulings, an analysis of Defendant's qualified immunity argument is not necessary.

## IV. Conclusion

Defendant's motion to dismiss is granted. A separate Order follows.

|  6/14/18  |  /S/  |
|---|---|
| Date | Paula Xinis<br>United States District Judge |